Mr. Justice STRONG
 

 delivered the opinion of the court.
 

 No exception was taken in the Circuit Court to the mode in which the accouut was stated.' -Of'.¡course no' exception can now be taken.
 

 The only question, therefore, which can be considered in this court is whether the agreement of February 19th, 1867, by which it was stipulated, between the complainants and the Butlers that the former should have an interest in the crop of 1867, as well as 10 per cent, interest and 10 per cent. commissions for advances, operated as
 
 a
 
 release of the notes and mortgage given by the sureties. The answer, to the question depends upon what took place when the Messrs. Roach became sureties.
 

 Waiving attention to the fact that no particular, or defined interest was given to the( complainants by their arrangement with the Butlers, it is plain it could not work a discharge of the sureties, unless it placed them in a different position from that which they occupied before it was made. If it took away any. security they had in virtue of their contract with the complainants, it was doubtless a fraud upon them, and they are not h.olden by their uotes and mortgage. If, when .they-became sureties, it was agreed by all the parties themselves, the complainants- and- the Butlers, that all the
 
 *170
 
 cotton crops raised on the demised plantation should be shipped to the complainants; and credited against the ad-, vanees to be made, it was bad faith to the sureties for the creditors to enter into an arrangement with the Butlers that a portion of the crops should be devoted to another use. On the other hand, if there was no such agreement respecting the crops made when the Messrs. Roach assumed their suretyship and gave their notes.and mortgage, the subsequent arrangement with the Butlers was.no alteration of the original contract, and.had no effect upon it. .
 

 It’is vital, then, to a correct decision of the case, to ascertain whether there was such an agreement made at the time-the suretyship was- undertaken,,an agreement to which the Messrs. Roach were parties. It was averred in the answer, of Eugene Roach that such an agreement was made between .t]ae complainants and the-Butlers, but when it wás made, ■whether at the time when the. notes were given or after-wards, is not stated. Nor is it alleged that the sureties were parties to it, or that they executed their’notes and mortgage in reliance upon -it. The answer of the Butlers is substantially the same, though, perhaps, it may reasonably be construed as averring that such an agreement was made between all the parties when the notes were given. But assu-miug that the averment is sufficiently made in both answers, since it is new matter hot responsive, to anything in the bill, it must be sustained by proof to be of any avail as a defence.
 

 And we do not find in the record any proof to sustain it. The only testimony-upon the subject isthat of Eugene Roach arid- R. B. Butler, two of the defendants. . Roach testifies that it was agreed that the cotton crop raised by the Butlers should be shipped to’Summers &-Co., and that the proceeds ■should be first applied, to the payment of' the. notes. But he does riot state whén or between whom this agreement was made. That he -is not speaking from his own knowledge of .-what took place when the notés were given is certain., for he says he was not present, and-that all his knowledge' wás -derived-from his brother.. And the testimony of B. M. -Butler also utterly, fails to establish such an .-.agree-
 
 *171
 
 men.t. In answer to an interrogatory whether at the time the notes were made there was any agreement that all the cotton shipped or to be shipped by him and R. B. Butler for the 3’ear 1867, as well as for subsequent years, was to be sold and the proceeds thereof applied by the complainants to the payment of the notes in preference to 0113' other debts due In' him and R. B. Butler, he said there was such 'an agreement. But in his cross-examination be said the agreement of which he spoke was made in New Orleans on the 19th of February, 1867, after the notes and mortgage were executed. The evidence, then, wholly fails to prove the existence of the agreement made at the time when the surer tyship was undertaken, and consequently the subsequent arrangement of February 19th, 1867, as well as the deed of trust for the crop of 1868, had no effect upon the liability of the mortgagors.
 

 Decree aeeirmed.