DEXTER *v.* GORDON

# DEXTER *v.* GORDON.

EQUITY PLEADING; EVIDENCE; EQUITABLE ASSIGNMENT; OFFER AND ACCEPTANCE.

1. Allegations of an answer to a bill in equity which are not directly responsive to the charges in the bill, but raise an independent defence in the nature of confession and avoidance, and which are put in issue by the replication, are not themselves evidence but must be proved.

2. Where such an allegation in an answer so put in issue by the replication sets up an estoppel in bar by reason of a decree which is made an exhibit to the answer, but the decree is not proved or offered in evidence, such decree can not properly be considered in evidence.

3. An offer or promise by the purchaser of real estate to assign to the vendor so much of a claim belonging to him as would amount to double the balance of the purchase money due when accepted by her, which offer he alleges she accepted, will constitute an equitable assignment of that portion of the claim, without regard to the form of the words or whether the promise to assign was in writing, as equity will regard that as done which ought to be done, and will give effect to it.

4. And where such a purchaser defeats a suit by the vendor for the balance of the purchase money, on the ground of her acceptance of his offer to assign a portion of the claim held by him, he is estopped to assert there was no assignment of his interest in the claim when she subsequently accepts such offer in a suit to establish her rights to a fund realized from the payment of the claim.

No. 662. Submitted April 15, 1897. Decided May 10, 1897.

HEARING on an appeal by the defendant from a decree in a suit to establish complainant's right to a fund in the hands of the Secretary of State, and to enjoin the defendant from receiving the same. *Modified and affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Cook & Sutherland, Mr. Alphonso Hart,* and *Messrs. Phillips & McKenney* for the appellant.

*Messrs. Barrett & Niles* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decree of the Supreme Court of the District of Columbia establishing complainant's right to a fund of $1,600, less certain credits, in the hands of the Secretary of State of the United States, and enjoining the defendant, James E. Dexter, from receiving the same. The complainant, Fanny K. Gordon, sues as assignee of Anne W. Frazer, upon a claim arising on a sale of certain lands by said Anne W. Frazer to the defendant, Dexter.

It appears that in February, 1893, said Frazer sold certain improved lots and lands in and near Staunton, Virginia, to said Dexter, subject to certain incumbrances. She was very needy and compelled to sell. The price to be paid by him was $1,200, part of which he paid in cash at the time or immediately after, leaving a balance due that is the subject of controversy. Mrs. Frazer claimed the balance of this sum in cash, and Dexter claimed that she had accepted an offer by him, at the time, of an interest in what is called the "Mora Claim," at the rate of two dollars of said claim for each dollar of the said balance. It appears that Mrs. Frazer did not recognize the claim of Dexter to such an arrangement, and being dissatisfied, began a suit against him to rescind.

It is conceded that this was ill advised and it was soon discontinued. Then she sued him at law, claiming the balance due in money. This suit appears also to have been discontinued.

The "Mora Claim" was a demand for damages urged by said Mora against Spain for about $1,500,000, and was at the time of this transaction, and had been for years, the subject of negotiation on behalf of Mora by the United States through the Department of State. Being still unsettled and the subject of some doubt, the value of the claim was entirely speculative, and the evidence tends to show that the highest rate

at which an interest in it had been traded or sold was about fifteen cents on the dollar. Dexter owned and controlled certain shares of the claim at the time, in amount more than sufficient to have satisfied the balance due Mrs. Frazer at the value of his offer; and at and before the time of the institution of this suit evidences of his claim seem to have been on file in the office of the Secretary of State. In the summer and fall of 1895 arrangements were completed with Spain by which the payment of the "Mora Claim" to the Secretary of State was assured. The evidence fails to show the exact date of the settlement or the payment of the money.

Mrs. Frazer, having had no final settlement with Dexter, either in the "Mora Claim" orders or in money, filed a bill against him and the Secretary of State. Pending that suit, which was subsequently dismissed, she assigned her claim to the appellee, Fanny K. Gordon. In the meantime Mrs. Frazer had filed her demand against the fund with the Secretary of State, accompanied by an account made out by Dexter, and had received from the Secretary the sum of $50 on account, to relieve her pressing necessities.

The history of the litigation as above given is gathered from the evidence of witnesses on both sides, who testified concerning it without objection. Defendant, by his answer, set up this litigation, and its results in bar of complainant's demand, attaching to said answer copies of the various proceedings. These allegations of the answer were not in direct response to the charges of the bill, but raised an independent defense in the nature of confession and avoidance. Having been put in issue by the replication it was incumbent upon the defendant to make proof of them. *McCoy* v. *Rhodes*, 11 How. 131, 141; *Clements* v. *Moore*, 6 Wall, 299, 315; *Roach* v. *Summers*, 20 Wall. 165; *Humes* v. *Scruggs*, 94 U. S. 22, 24; *Seitz* v. *Mitchell*, 94 U. S. 580, 582. Inasmuch as the pleadings in said several suits could not themselves work an estoppel, their exclusion from the case is a matter of no practical importance. But the question is different in

respect of the decree alleged to have been passed dismissing the bill filed by Mrs. Frazer against the defendant and the Secretary of State, which decree is claimed to be a complete and final adjudication of the issues involved in this case, and, as such, binding on the appellee as assignee of said Frazer. It is clear that the appellee did not attempt to make herself a party to that suit, and there is some evidence tending to show that notice of the assignment was given to the counsel for Dexter before the final hearing of the cause, and that it was mentioned to the court before any decree was passed. The copy of that decree, which is attached to the defendant's answer, recites that the cause came on for hearing on the bill, the demurrer of the Secretary of State, and the answer of the defendant, and the proofs and exhibits; and that the demurrer was sustained, the injunction denied, the restraining order dissolved, and the bill dismissed. It is conceded that no evidence had been taken in the case.

An objection to the estoppel claimed to have been worked by that decree, if it is to be considered as before us, is urged on the ground that, having been rendered after the assignment of the demand by Mrs. Frazer and with knowledge thereof by the counsel for defendant and by the court, it is a nullity in so far as the appellee is concerned. This objection is founded on a distinction claimed between the effect of the voluntary alienation of the subject-matter of the controversy, in equity, by the complainant, on one hand, and by the defendant, on the other, *pendente lite*.

Another question that presents itself is this: whether, if the bill and answer in that case were before us in the evidence, the issues involved and determined are necessarily identical, in substance, with the issues as presented in this. From the parties and from the recitals of the alleged decree, the schemes of the two bills, at least, are at variance. But these questions do not properly arise on the record and need not be determined.

On the argument, the appellee objected to the considera-

tion of the decree because it is not properly in evidence. Although made an exhibit to the answer, the record shows that it was never proved or offered in evidence. Nor has it been made a part of the proof by stipulation. As we have seen above, the independent allegations of the answer setting up the estoppel in bar, having been put in issue by the replication, were not themselves evidence. Like the unadmitted allegations of the bill, they amount to nothing if not proved. One of the cases cited above is directly in point. *Humes* v. *Scruggs*, 94 U. S. 22, 24. In that case the appellee, Scruggs, who was the defendant, sought to bar recovery by setting up a decree rendered in another cause concerning the property in controversy, a copy of which was annexed to the answer. There was a general replication as in this case. Referring to the decree, the court said: "It is supposed that this suit, and this decree, forming a part of the answer of Mrs. Scruggs, furnished the support to the decree dismissing the bill in the present suit on the pleadings. . . . By the interposition of a general replication, every allegation in the answer of Mrs. Scruggs, not responsive to the bill, was denied. No such allegation could be taken as true, but must be proved before it could be used by the party making it. The allegation of a former suit and of the decree therein came under this rule."

We pass now to the consideration of the evidence concerning the transactions between Anne W. Frazer and the defendant Dexter in regard to the payments made and promised to be made for the lands conveyed by her to him. Both agree that the amount of the consideration was fixed at $1,200, but differ materially in respect of the amounts actually paid and of the manner of payment agreed upon for the residue. Defendant has maintained from the beginning that the offer was made by him and accepted by Mrs. Frazer to pay the balance of the purchase money in an interest in the "Mora Claim." When Mrs. Frazer sued him at law to recover the balance due as claimed by her, his affidavit of defense,

made a part of the present bill, so stated the contract. He rendered her an account, the date of which does not appear, though the last item of debit is of April 3, 1893, which she filed with the Secretary of State. It shows a balance due her of $826.10, and thereunder is written: "This balance to be paid by an assignment in the Mora Claim of double the amount." In his answer in this suit he says that he agreed to pay the balance in the "Mora Claim," and "that he would make these cash payments to and for her, and after they were made they would look over the amount of money and bills paid by him to and for her and ascertain the balance due, and when it was so ascertained, and not before, he would transfer and assign to her an interest in the Mora Claim in double the amount of the balance found due." Elsewhere in the same answer he affirms his promise to assign her a part of the "Mora Claim" in amount double the balance due. In his testimony also he says that he offered to assign her the interest in the "Mora Claim" for the balance; that she took time to make inquiries as to its value and chances of recovery, and then returned and accepted the offer. The consideration on her part was complete and more than adequate, considering the value of the claim at that time. She had executed and delivered to him a formal conveyance of her property. Looking at the contract or agreement from defendant's point of view, there seems to be a clear case of an equitable assignment to Mrs. Frazer of so much of the "Mora Claim" belonging to him as would amount to double the balance due her, whatever that was. His was not a mere promise to pay her out of the fund whenever he might collect the same; but an offer, a promise, to assign her a present interest in the claim itself. Without regard to the form of words, this was his plain intention, and equity will regard that as done which ought to be done, and give effect to it. *Christmas* v. *Russel,* 14 Wall. 69, 84; *Wood* v. *Dickinson,* 18 D. C. 301, 306; *Williams* v. *Ingersoll,* 89 N. Y. 508, 521; *Fourth Street Bank* v. *Yardley,*

11 Ct. App.—6.

165 U. S. 634, 644.   That this promise to assign was not in writing does not affect the right.   It is not necessary to its operation that it be so expressed.   *Bank* v. *Yardley, supra;* *Williams* v. *Ingersoll,* 89 N. Y. 508; *Crane* v. *Gough,* 4 Md. 316, 334; *Field* v. *Megaw,* L. R. 4 C. P. 660.

.The fact that Mrs. Frazer did not at that time so regard the agreement between them ought not, under the circumstances, to affect her right to recover according to *his* version of it.   What right has he to complain if the contract shall be enforced as he declares it to have been made?   He has suffered no injury.   There is no element of estoppel. It is true that she sued him at law for the recovery of the unpaid balance of the purchase money; but he met her demand with the assertion of a promise of the assignment as a full discharge of the obligation, and she took nothing by her suit.

When she sued in equity to assert some interest in the "Mora Claim," he met her again with determined and effective opposition to the remedy sought.   During all this time he paid her no money, and has made no offer of satisfaction, in any form, of the small balance that even he admits to be due.   When she sued at law, he tendered her no assignment of the "Mora Claim" for any amount.   When she sued in equity he tendered her no money.   Having refused to settle according to her understanding of the contract, he has so far failed to tender even part performance according to his own. He had her title and the enjoyment of her property.   He seems in fact to have negotiated a loan by its mortgage. She was without written evidence of the transaction, and had nothing but the small sums that he had paid her and which went at once to prevent the sacrifice of some of her remaining household and personal effects.   Having had full performance by her, he could afford to wait.   She, on the other hand, was driven to action by his delay.

In the light of the criticism that her conduct in the premises has received, and whatever view may be taken of it,

it must be remembered that she was a woman of apparently no business capacity; that she was in a desperate financial strait, and that she seems to have had implicit confidence in defendant's integrity and generosity. Let it be conceded that she has not been free from blame in the course that she has pursued, and yet, nevertheless, his conduct remains without justification or excuse.

It is further contended on behalf of the appellant that his offer or promise to assign to Mrs. Frazer the part interest in the "Mora Claim" ceased to bind him because of her non-acceptance or, rather, repudiation of it. No one pretends to doubt the abstract proposition that an unaccepted offer can not form the foundation of an action; but it has no application in this case. Having accepted and retained the title and possession of her property, he can not invoke a principle of law applicable in the case of a proposed seller or contractor whose offer has been declined. He made no offer to rescind by reason of her misunderstanding or repudiation of the contract, whichever it may have been. He held the property in accordance with, and subject to, the contract as he understood and asserted it to be. She, failing in her contention, and appreciating at last the advisability of accepting his version of the contract, proceeded to do so. His offer, remaining as it had been made, was at last accepted and acted upon. The suit by the appellee, as assignee of Mrs. Frazer, is for performance simply of the contract which he claims to have entered into. It does not lie in his mouth now to object or complain. Equity and good conscience alike forbid.

It now remains to consider the conclusions in respect of the amount of the "Mora Claim" fund to which appellee is entitled. In this respect the decree, as entered, is somewhat uncertain in its terms and should be amended. Without discussing the evidence, we think it shows that the statement of the account by Mrs. Frazer is substantially correct, showing that up to April 7, 1893, she had received from Dexter,

in various amounts, the sum of $554.90, leaving a balance
due her of $645.10.    Doubling this sum, according to the
contract, she was then entitled to receive from the "Mora
Claim" the sum of $1,290.20.    From this must be deducted,
of course, the $50 received by Mrs. Frazer from the Secre-
tary of State.    We think, also, that appellant is entitled to
a credit for the sum of $21.89 for back taxes paid by him on
the lands purchased from Mrs. Frazer.    We must presume
that she was bound for the taxes under her deed, and the
testimony by appellant to their payment is unquestioned.
The true balance of the fund, then, to which the appellee is
entitled, amounts to the sum of $1,218.31, and the decree
should have been for that sum.    As so modified, the decree
will be affirmed, with costs to the appellee, and the cause re-
manded with direction to amend the decree in accordance
with the decision of this court.    And it is so ordered.

*Modified and affirmed.*