# WILKINSON *v.* McKIMMIE.

BONDS; PRINCIPAL AND SURETY; PLEADING; EVIDENCE.

1. The fact that the declaration in an action on a bond under seal, conditioned for the performance of a building contract by the principal obligor, alleges that the defendant's sureties consented in writing to an extension of time for performance, does not change the declaration from one in debt on a specialty to one in assumpsit, so as to make the bond inadmissible in evidence, where no additional claim in the case is founded on the extension, and where the declaration complies with Rule 27 of the lower court, in that it contains a plain statement of facts necessary to constitute a cause of action, and is substantially in the form of covenant.

2. A material change in a contract with a principal without the assent of the surety, even though it may prove to his advantage, discharges the surety, but an immaterial change that does not put the surety in a position different from that he had before occupied has no such effect.

3. Where, in a contract between owners of unimproved lots and a builder, the owners agreed to convey all of the lots to the builder, and the latter agreed to build houses on two of the lots, and to reconvey the two lots so improved to the owners free of all encumbrances, the fact that the owners, with the consent of the builder and to save the expense of reconveyance, retained title to the two lots, would not have the effect of discharging the sureties on a bond given by the builder to the owners, conditioned upon the performance of the contract, as it worked no change in the position, rights, and obligations of the parties.

4. In an action on a bond given by a builder to the owners of unimproved lots, conditioned upon the performance by the builder of a contract whereby, in consideration of the conveyance to him of all the lots, he agreed to build houses on two of them, and to reconvey the two lots so improved free of encumbrances to the owners, it is not necessary for the plaintiffs to prove that they had title to the lots, if the title has not been put into issue or even questioned. Nor is it necessary for them to prove authority for the subdivision of the property into small lots upon which the builder intended to erect a series of houses.

5. Where the signature of the parties and the execution of a written in-
strument are not questioned, and one of the parties testifies that
he signed one of the instruments, and would not say positively that
he did not sign the other, and the other party will not deny the
execution of either, but testifies that one of the signatures looks like
his, but he will not acknowledge the other to be his, and he further
states that the signatures speak for themselves; and it further ap-
pears that before the suit was commenced both parties received a
letter from the attorney for the other party to the contract relating
to the instrument, and did not reply to it,—it is not error for the
trial court to submit to the jury the evidence regarding the execu-
tion of the instrument.

6. The provision of sec. 1211, D. C. Code, 31 Stat. at L. 1380, chap. 854,
that one action may be sustained and judgment recovered against
all or any of several joint and several obligors, does not require that
this shall be done; so that a discontinuance of an action on a
bond as to the principal obligor will not work a discontinuance as
to the sureties.

No. 2197. Submitted December 8, 1910. Decided February 6, 1911.

HEARING on an appeal by defendant sureties from a judg-
ment of the Supreme Court of the District of Columbia on
verdict in an action on a bond.                    *Affirmed.*

The Court in the opinion stated the facts as follows:

On November 27, 1905, Oscar A. and Simon McKimmie en-
tered into a contract with George P. Horton whereby they
covenanted to sell to Horton lots 27, 28, 29, and 30 in Todd
and Brown's subdivision of Mount Pleasant and Pleasant
Plains in the District of Columbia, for the sum of $11,500.
In consideration of said promise and the sum of $10, Hor-
ton agreed to purchase said land, promising to assume the
payment of a mortgage of $3,000 on said property, to pay
$1,000 on delivery of the deed, and to reconvey to the McKim-
mies two lots, each 16 feet and 8 inches front on Brightwood
avenue (part of the above-described lands), free of all encum-
brances, liens, etc., first erecting on each a two-story brick
dwelling complete, according to plans and specifications ap-

proved by said parties; said houses to be completed within eight months from date. Said Horton also agreeing to give a satisfactory bond for the construction of said houses as stipulated. The contract was under seal. Under date of January 6, 1906, Horton as principal, with Wilkinson and Kemp as sureties, executed under seal and delivered a bond to Oscar A. and Simon McKimmie, binding themselves jointly and severally, in the sum of $7,000 for the faithful performance of the contract aforesaid.

On April 2, 1909, Oscar A. and Simon McKimmie brought an action against Horton, Wilkinson, and Kemp. The declaration set out the contract and bond aforesaid, and alleged the conveyance to Horton of the land aforesaid, except that "in lieu of conveying to him the two lots, each 16 feet, 8 inches, front on Brightwood avenue, the said plaintiffs, at the request of said Horton, for the purpose of saving the expense and inconvenience of a reconveyance, retained the title to the two lots mutually agreed upon and selected by them and the said Horton." It was further alleged that, at the request of the said Horton and with the consent of said sureties, the time for the performance of said agreement was extended for a period up to January 2, 1907, and thereafter upon request and upon consent as aforesaid, the time was further extended to May 2, 1907. It was further alleged that Horton had failed to perform said agreement by erecting said houses, whereby said lots were worth $7,000 less than they would have been, had said houses been erected as agreed. Wilkinson and Kemp demurred to the declaration on the ground that it showed such a variation of the terms of the contract and bond as to release the sureties.

The demurrer was sustained by the justice then holding the circuit court, with leave to plaintiffs to amend. The amended declaration followed the original, but elaborated the allegation with regard to the exte⁀ ⁀n of time, alleging that each extension was consented to by the sureties in writing. It was further alleged that, prior to the consent to said extension of time, the said sureties had actual notice of the fact that the

two lots, each fronting 16 feet 8 inches on Brightwood avenue, had not been conveyed by plaintiffs to said Horton.

Defendants pleaded: (1) That they were not indebted as alleged. (2) That defendant Horton had fully performed his agreement. (3) That plaintiffs were not injured by the failure of said Horton. (4) That defendants never had notice that the two lots fronting on Brightwood avenue had not been conveyed to Horton; and never consented to any extensions of time for performance by Horton, as alleged. (5) That defendants never assented to the alteration or modification of the terms or conditions of the contract. Plaintiffs discontinued as to Horton, and joined issue on the said pleas.

Plaintiffs offered in evidence the contract and bond, the execution of which was admitted. Defendants objected to their competency under the amended declaration, which was in form neither in debt, covenant, or assumpsit, as claimed by plaintiffs; and further because it appeared on the face of the declaration that there had been a material variation of the terms of the bond and contract, and it did not appear whether the variation of said terms was under seal or by parol. The court overruled the objections, holding that the amended declaration was sufficient, and that the variation of the terms of the contract by the failure to convey to Horton the part of the land included in the two Brightwood avenue lots was not a material variation of the terms of said contract and bond. Defendants excepted. Plaintiffs then offered in evidence two writings of date, respectively, July 27, 1906, and November 26, 1906. Each contract, purporting to be signed by Horton and each surety, provided upon a consideration for extensions of the time of performance by Horton, the first to January 2, 1907, and the second to May 2, 1907. To the first extension agreement, one of the signatures was "Thomas J. Kemp;" to the second, "T. J. Kemp." Each extension agreement was attested as follows: "Signed, sealed, and delivered in the presence of," signed, "Geo. E. Terry, Notary Public, D. C." with seal attached.

Kemp, called as a witness by the plaintiffs, and asked if he

signed his name to said papers, said that "while the signatures looked like his, he had no recollection of ever signing either of said papers, and that he had never signed any paper before George E. Terry, notary public, and that he never signed his name 'Thomas J. Kemp,' but invariably signed it 'T. J. Kemp.' "

Wilkinson, called as a witness by plaintiffs, testified that "he had no recollection of signing either of said papers; that one of said papers looked like his genuine signature, to wit, the paper having date 27th of July, 1906, while that bearing date November 26, 1906, did not look at all like his signature." He said further that he never signed any paper with George E. Terry, notary public, as a witness. The papers were admitted in evidence over the objections of defendants, who excepted. W. E. Ambrose, attorney for plaintiffs, testified that on March 7, 1907, at a conference at his office, there were present besides himself, Herman W. Van Senden, the two defendants, the plaintiffs, and Charles Poe. Said conference was called by him because of Horton's insolvency. It was stated by someone that it was a lucky thing that the plaintiffs had not conveyed the two lots in question to Horton. There was some discussion of that subject, the details of which he did not remember.

Oscar A. McKimmie testified that he saw Wilkinson every day or so after the execution of the contract, and talked about the progress of Horton. Was at the conference in Ambrose's office. Conversation was as to what Horton had done before conveying to Van Senden. Statements were made by several persons about the two lots not having been conveyed, and it was understood that they had not been conveyed. All the property was conveyed to Horton except the two lots, which was at his suggestion. Witness identified the plans and specifications for the erection of seventeen houses by Horton, and conversed about leaving out the two lots. That subject was discussed in detail, the two lots joining. Never had any conversation with Kemp about leaving out the two lots, until the full conversation in Ambrose's office. He also testified to the value of the two lots with and without the houses. On cross-examination he

was asked: "Did you subdivide the lots mentioned in the agreement without consulting Kemp or Wilkinson?" The court sustained plaintiff's objection to answering this question.

Haller, the architect, testified that he drew the plans and specifications of the houses for Horton, which were never built. Wilkinson was in his office frequently, and knew that the plaintiffs were holding the two lots, and made no objection to the same. Kemp was anxious about the building of the two houses for the McKimmies. Wilkinson said that Kemp would look out for the McKimmies, and see that they got what they were paying for. McKimmies had given fifteen lots for these two houses. Kemp urged him to build these houses. Had no conversation with Kemp about the two lots.

Simon McKimmie testified that he was present at the conference in Ambrose's office, and there was some conversation about the two lots, which he could not recall. Everybody seemed to think it fortunate that these two lots had not been conveyed to Horton. Did not get the extension papers from Kemp, Wilkinson, or Terry, but from Horton. Was not present at their execution.

Kemp, for defendants, testified that he first met the McKimmies in Ambrose's office in January, 1907. Never talked with them about these lots. First learned that they had not been conveyed from Mr. Poe, when witness took him a copy of the declaration in this case. George P. Hoover had been his attorney before that. There was no conversation about the two lots at the conference. Defendants were called there because Horton had failed in his building contracts, and had made a deed of the land conveyed by plaintiffs, to Van Senden. There was some talk of throwing Horton into bankruptcy. Witness said that he received the following letter on March 9, 1907:

March 7th, 1907.

Drs. Oscar Wilkinson & Thomas J. Kemp,
        Washington, D. C.
    Dear Sirs:—
    I beg to notify you as counsel for Messrs. Oscar A. M. Mc-

Kimmie and Simon McKimmie, and duly authorized by them, George P. Horton, Jr., one of the parties to a contract bearing date November 27th, 1905, for the performance of which contract, you and each of you became sureties under a bond for the performance of said contract, executed the 10th day of January, A. D. 1906, has not performed, or attempted to perform, his said contract, or any part thereof, or any of the covenants or agreements by him made or contained therein, and that the time for the performance of said contract, together with the extensions therein granted to him, and acceded to by you, has about elapsed. We therefore demand that the covenants of said contract be performed by you in event of failure upon the part of the principal.

This letter is in pursuance of previous conversations had relative to this matter at various times.

Very respectfully,

Wm. E. Ambrose.

Made no reply to this letter. Did not sign the extension dated July 27, 1906; did sign that of November 26, 1906.

Oscar Wilkinson, for defendants, testified: Never had any conversation with plaintiffs after signing the bond. Was in Haller's office frequently in 1905, but never discussed the matter of the transfer of these lots with him, and never saw the plans and specifications. Did not know the lots were not transferred. The signature on extension paper of July 27, 1906, looks like my signature, but have no recollection of signing it. As to the one of November 26, I have no recollection and would not acknowledge as my signature. Having explained the signatures he said: "Those signatures speak for themselves." Cross-examined he said the conference in Ambrose's office was primarily about putting Horton in bankruptcy. Did not remember conversation about the two lots. Asked: "Did you or not sign these papers?" (The extensions.) He said: "I do not remember signing either one."

Van Senden testified that he was at the conference in Ambrose's office. Came at the request of Ambrose. The convey-

ance of the fifteen lots by Horton to him provoked the meeting. Had been conveyed to him as security. Afterwards bought them at a sale under a first deed of trust. The subject of conference was Horton's delinquency on the Kenyon street contract. Did not recollect that anything was said about the two lots.

Charles Poe testified that he attended the conference as Van Senden's attorney and wholly in his interest. Could recall no suggestion that the two lots had been omitted from the conveyance to Horton.

The defendants prayed the court to instruct the jury as follows: 1. Plaintiffs cannot recover on the bond and agreement mentioned in the declaration and offered in evidence, and the verdict must be for the defendants. 2. The verdict must be for the defendants because there is no evidence to show that the plaintiffs ever had a good title to the property described in the contract. 3. Verdict must be for defendants because there is no evidence that defendants or either of them ever authorized the plaintiffs to subdivide the property. 4. Verdict must be for the defendants because there is no evidence legally sufficient to show that defendants or either of them authorized or consented to the conveyance to Horton of less than the whole of the property.

These were refused, with exceptions reserved.

In the general charge the court explained the issues to the jury in language that was not excepted to, and charged them, if they found that defendants executed the two extension papers, the plaintiffs would be entitled to recover on that issue. In regard to the failure to convey the two lots to Horton, the court charged the jury that, as a matter of law, it was not such a change in the contract as would release the sureties. He, however, submitted four special issues: 1. Did the defendants sign the extension agreement of July 27, 1906. 2. Did they then know that the two lots had not been conveyed to Horton? 3. Did they sign the paper of November 26, 1906? 4. Did they then know that the two lots had not been conveyed to Horton? He then charged the jury as to the measure of damages in case of finding for plaintiffs. In stating the ground

of recovery on account of the rental value of the houses, defendants' counsel excepted, because of the word "net" before "rental value." No other exception was noted. At request of defendants and with consent of plaintiffs, the jury were permitted to take with them the contract, bond, and the two extension papers. The jury answered "yes" to each of the special issues submitted, and returned a general verdict for plaintiffs for $5,736.72.

Defendants moved in arrest of judgment. 1. Because the action is against but two of the three joint and several obligors on the bond. 2. Because the action has been discontinued against one of the three joint and several obligors. 3. Because though one of the three joint and several obligors has died since the institution of this suit, plaintiffs have failed to make his personal representative a party defendant. 4. Because the declaration shows upon its face that the bond sued on was altered and amended by parol agreement of the parties subsequent to its execution under seal. The motion was overruled, and judgment entered on the verdict for $5,736.72.

From this defendants have appealed.

*Mr. Charles Poe* for the appellants.

*Mr. W. E. Ambrose* and *Mr. John Ridout* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

There are nineteen assignments of error in this case, some of which have been argued together. Under the first group the contention is that while the declaration counts upon the contract and bond under seal to a certain point, and that far sounds in debt, it does not stop there, but proceeds to allege the alterations of the contract in respect of the change in excepting the two lots from the conveyance to Horton, and in respect of the extensions of time for completion, without alleging that the said alterations were under seal.

For this reason it is contended that the declaration sounded
in assumpsit, and the instruments under seal are not admissible
thereunder. We perceive no merit in this contention. The dec-
laration complies with rule 27 of the supreme court of the
District, in that it contains a plain statement of the facts neces-
sary to constitute the cause of action, and is substantially in
the form of covenant. It sets out the contract and bond under
seal and the breach of the obligation. In anticipation of the
defense founded on the extension of the time for performance,
it alleges the consent of defendants thereto. The action is on
the bond given for the performance of the contract that was not
performed. The liability of the sureties would be discharged
by the extension unless it could be shown that they had con-
sented thereto. It was proper and necessary to allege this con-
sent in order to recover on the bond. No additional claim was
founded on those instruments. In this respect the declaration
was similar to those in two of the cases relied on by defendants,
—the first in support of this contention and the second on the
question of discharge by reason of the alteration of the contract
in the matter of the omission to convey the two lots. *Phillips
&c. Constr. Co.* v. *Seymour,* 91 U. S. 646–652, 23 L. ed.
341–344; *United States* v. *Freel,* 186 U. S. 309, 310, 46 L. ed.
1177, 1178, 22 Sup. Ct. Rep. 875. *Phillips &c. Constr. Co.*
v. *Seymour* was an action of covenant for part performance of
a contract under seal, the complete performance of which in
time had been prevented by the defendant. An additional re-
covery was had on a special finding by the jury upon evidence of
extra work done under an additional parol agreement. The
court said: "There is no allegation of this promise in the
declaration, which is an action of covenant on the sealed agree-
ment. There is no allusion to it, or provision for it, in that
instrument. It is found by the special verdict to be a promise,
and the record shows that it was by parol." It was held that
assumpsit would be the proper action on this promise, and that
it could not have been joined, if attempted, with the action of
covenant, under the common-law rules of pleading prevailing in
the State where the action had been brought. Judgment on the

special verdict was reversed, but that founded on the sealed contract, with proof of waiver of performance in time, was affirmed.

Nor do we coincide with the view that the sureties were discharged by the change in the performance of the contract by which the two lots were excepted from the conveyance to Horton. A material change in a contract with a principal without the assent of the surety, even though it may prove to his advantage, discharges the latter. But an immaterial change that does not put the surety in a position different from that he before occupied has no such effect. *Roach* v. *Summers,* 20 Wall. 165–169, 22 L. ed. 252, 253; *Cross* v. *Allen,* 141 U. S. 528–537, 35 L. ed. 843–849, 12 Sup. Ct. Rep. 67; *The Beaconsfield,* 158 U. S. 303–312, 39 L. ed. 993–996, 15 Sup. Ct. Rep. 860.

The exclusion of the two lots from the conveyance to Horton, at his suggestion, was a mere matter of convenience that worked no change in the positions, rights, or obligations of the parties.

In form the contract was to convey the whole of the land to Horton, who was to reconvey the two lots and erect certain houses upon them,—the same to be free of any and all liens and encumbrances. Its real effect was that Horton was to have title to the remainder of the land, in consideration of his erecting the two houses on the lots for plaintiff. Notwithstanding the form of the contract, upon conveyance of the whole, the equitable title to this part would remain in the plaintiffs.

The defendants' second prayer was properly refused, because it was not necessary that plaintiffs should prove that they had a good title to the land described, the same not having been put in issue, or even questioned. Nor was it necessary to prove authority for the subdivision of the property into the small lots upon which Horton intended to erect a series of houses. The two small lots to be reconveyed to plaintiffs were expressly provided for. It was not error to submit to the jury the consideration of the evidence regarding the execution of the two extension agreements. Kemp admitted that he signed the latter paper, and would not say positively that he did not sign the other. Nor did Wilkinson deny the execution of either. He

did not recollect the fact. One signature looked like his. The other he would not acknowledge as his. He compared them with signatures to the other papers, and said, "Those signatures speak for themselves." That he relied upon an apparent difference between these several signatures is shown by the request of his counsel that the jury should take all of the signed papers with them for consideration. Moreover, the letter of Ambrose notifying them of the default of Horton, and of the near approach of the expiration of the extension acceded to by them, was not responded to or denied. While the testimony was meager, we think it was sufficient to be submitted to the jury, who specially found that they executed each paper, and also that they had knowledge of the omission to convey the two lots to Horton, when each was executed.

That the action was discontinued as to Horton, who it seems had become insolvent, presents no ground for arresting the judgment. Sec. 1211 of the Code [31 Stat. at L. 1380, chap. 854] simply provides that one action may be sustained, and judgment recovered against all or any joint and several obligors. It does not require that this shall be done. We have considered all of the points involved, without separately noting the several unnecessary assignments of error, and find no ground for reversal. The judgment will therefore be affirmed, with costs.

*Affirmed.*

On application of the appellants, an appeal to the Supreme Court of the United States was allowed, February 9, 1911.