626 F.2d 933

**Athanasios KONSTANTINIDIS and Vasiliki Konstantinidis, his wife, Appellants,**

v.

**C. N. CHEN, M. D.**

**No. 79–1313.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 25, 1979.

Decided Feb. 21, 1980.

Wayne M. Mansulla, Alexandria, Va., for appellants.

J. Joseph Barse, Washington, D. C., for appellee.

Before J. EDWARD LUMBARD,* U. S. Senior Circuit Judge for the Second Circuit, and TAMM and MIKVA, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

This controversy concerns the "judicial estoppel" doctrine and its viability in the District of Columbia. After receiving a workmen's compensation settlement for damages that he had alleged resulted solely from a work-related accident, plaintiff Athanasios Konstantinidis sued defendant Cheng Nan Chen, a medical doctor, for essentially the same damages on a claim of medical malpractice.[1] Relying on the doctrine of judicial estoppel, the district court granted defendant's motion for summary judgment. The plaintiff's prior assertion that his accident was the sole cause of his injuries, according to the court, barred him from now contending that Dr. Chen's negligence was a contributing factor. Plaintiff appealed.

Applying the law of the District of Columbia, we find that the District of Columbia courts have not recognized the doctrine of judicial estoppel and would not do so in the present case. We therefore reverse and remand.

I

The facts material to this appeal are not in dispute. On August 30, 1972, while working as a carpenter, Konstantinidis fell off a sawhorse, injuring his neck and back. The Maryland Workmen's Compensation Commission (Commission) granted Konstantinidis' application for a temporary total disability based on these injuries.

Seventeen months later Konstantinidis placed himself under the care of the defendant, Dr. Chen, and received a series of acupuncture treatments. On March 30, 1974, during one such treatment, an acupuncture needle broke off, leaving the tip lodged in Konstantinidis' neck. Konstantinidis subsequently complained of increased neck pain radiating into his right arm. After another physician diagnosed a spinal defect, Dr. John W. Barrett performed a cervical laminectomy to remove a ruptured disc. Dr. Barrett also extracted the needle tip.

Konstantinidis' neck pain and discomfort persisted, and in August of 1974 he filed a supplementary claim with the Commission. After a hearing, Commissioner Frankel denied the supplementary claim, finding that Konstantinidis' accident had not caused the neck disability. The decision was affirmed on rehearing.

Konstantinidir appealed the Commission's adverse ruling to the Prince George's Coun-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

1. Vasiliki Konstantinidis, Athanasios' wife, also challenges the district court ruling. Her posi-

ty Circuit Court,[2] but before the court could act the parties reached a settlement. Konstantinidis received $20,000 from his employer and the employer's insurer. In return, Konstantinidis executed a final compromise and release, which the Commission approved.[3]

In early 1977 Konstantinidis filed the present medical malpractice suit in the United States District Court for the District of Columbia.[4] Konstantinidis claimed Dr. Chen's negligent acupuncture treatment had caused the ruptured disc and related medical problems that had been detailed in the supplementary workmen's compensation application as having been due to the sawhorse fall. Dr. Chen moved for summary judgment, arguing that Konstantinidis' submissions and pleadings before the Com-

mission and the Prince George's County Circuit Court judicially estopped Konstantinidis to attribute the injuries to the broken needle rather than the sawhorse accident.[5]

The district court found that Konstantinidis had consistently contended in the past that the fall from the sawhorse constituted the only cause of his neck, arm, and back pains. Concluding that the judicial estoppel doctrine barred Konstantinidis from claiming that Dr. Chen's actions were responsible for the injuries, the court granted summary judgment in favor of Dr. Chen. Konstantinidis now appeals that decision.

## II

At the outset we must distinguish "equitable estoppel" from the more obscure concept of "judicial estoppel."[6] *See gener-*

---

tion is identical to her husband's and needs no independent discussion.

2. The Maryland workmen's compensation law authorizes such an appeal to "determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the article, and whether it has misconstrued the law and facts applicable in the case decided." Md.Ann.Code art. 101, § 56(a) (1979).

3. In requiring Maryland Workmen's Compensation Commission (Commission) approval of settlements, the Maryland statute states that said claimant and/or his or her dependents may, with the approval of the Commission, enter into an agreement with the employer or insurer of such employer . . . providing for a final compromise and settlement of any and all claims which said employee or his or her dependents might then or thereafter have under the provisions of this article, upon such terms and conditions as the Commission shall, in its discretion, deem proper. Any such settlement when approved by the Commission shall be binding upon all parties thereto, and no such settlement shall be effective unless approved by the Commission. *Id.* § 52.

4. The district court, pursuant to 28 U.S.C. § 1332 (1976), properly based its jurisdiction on diversity of citizenship.

5. Dr. Chen bases his estoppel contention upon six submissions or statements made by plaintiff or his counsel:

(1) Konstantinidis submitted a neurosurgical report by Dr. Barrett stating that the lodged acupuncture needle tip and Konstantinidis'

symptoms were unrelated. Joint Appendix at 78.

(2) Konstantinidis filed a letter from Dr. Barrett stating that the acupuncture needle tip "did not in any way impinge upon the dural sac or nerve root and in no way could have produced the patient's pain in his right arm" and that Dr. Barrett had told Konstantinidis no special measures would be taken to remove the lodged needle tip because it was "my firm conviction that this acupuncture needle did not produce even an aggravation of the patient's root nerve symptoms . . . ." *Id.* at 83.

(3) Konstantinidis also filed the reports by Dr. Barrett indicating that Konstantinidis complained of neck pain prior to the acupuncture accident. *Id.* at 76, 78.

(4) Konstantinidis' counsel before the Commission stated during the hearing that the needle and the ruptured disc were unrelated. *Id.* at 98.

(5) Konstantinidis' petition to the Prince George's County Circuit Court for review of the Commission decision decried the Commission's finding that the sawhorse accident did not cause his disc injury as "contrary to and against the weight of evidence and law applicable thereto." *Id.* at 100.

(6) In response to interrogatories during the course of the county court appeal, Konstantinidis disclosed the acupuncture accident but denied that its occurrence affected his claim. *Id.* at 102.

6. The definitions of "equitable estoppel" and "judicial estoppel" vary considerably throughout the literature of this confused area of the law. *See generally* Beck, *Estoppel Against Inconsistent Positions in Judicial Proceedings,* 9 Brooklyn L.Rev. 245 (1940). Our use of these

*ally* 1B *Moore's Federal Practice* ¶ 0.405[8] (2d ed. 1965). Virtually all courts agree that equitable estoppel may be applied to preclude a party from contradicting testimony or pleadings successfully maintained in a prior judicial proceeding. *See, e.g., Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895). The party seeking to invoke the estoppel, however, must have been an adverse party in the prior proceeding, must have acted in reliance upon his opponent's prior position, and must now face injury if a court were to permit his opponent to change positions. *See Galt v. Phoenix Indemnity Co.,* 74 U.S. App.D.C. 156, 159, 120 F.2d 723, 726 (D.C. Cir.1941). *See also* Note, *Procedure—Judicial Estoppel—Sworn Statements,* 11 Sw. L.J. 96, 96–97 (1957). The privity, reliance, and prejudice requirements demonstrate that the doctrine is designed to ensure fairness in the relationship between the parties. As Professor Pomeroy states, the rule's "object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of law, unless prevented by the estoppel." 3 *Pomeroy's Equity Jurisprudence* § 802 (5th ed. 1941). The party seeking the protection of the estoppel is the intended beneficiary of the doctrine, for "its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of estoppel." *Id.*[7]

"Judicial estoppel," on the other hand, although otherwise similar to the equitable estoppel rule against inconsistency, does not require proof of privity, reliance, or prejudice. *Sartain v. Dixie Coal & Iron Co.,* 150 Tenn. 633, 648–49, 266 S.W. 313, 317 (1924). This distinction reflects a difference in policy objectives: in contrast to equitable estoppel's concentration on the integrity of the parties' relationship to each other, judicial estoppel focuses on the integrity of the judicial process. To the extent that prior sworn statements are involved, the doctrine upholds the "public policy which exalts the sanctity of the oath. The object is to safeguard the administration of justice by placing a restraint upon the tendency to reckless and false swearing and thereby preserve the public confidence in the purity and efficiency of judicial proceedings." *Melton v. Anderson,* 32 Tenn. App. 335, 339, 222 S.W.2d 666, 669 (Ct.App. 1948). *See Hamilton v. Zimmerman,* 37 Tenn. (5 Sneed) 39 (1857). Furthermore, even when the prior statements were not made under oath, the doctrine may be invoked to prevent a party from playing " 'fast and loose with the courts.' " *Scarano v. Central Railroad,* 203 F.2d 510, 513 (3d Cir. 1953).[8]

Whatever the value of the judicial estoppel doctrine, we must bear in mind that this case comes before the federal courts because of the parties' diversity of citizenship. Therefore, the Supreme Court's decisions in *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), compel us to look to District of Columbia law to determine whether judicial estoppel should be applied.[9] We

terms is not meant to generate further confusion, but only to label what we perceive to be two distinct doctrines.

Collateral estoppel, another issue preclusion doctrine, differs from both equitable and judicial estoppel. Collateral estoppel operates to prevent repetitive litigation. Thus the doctrine does not apply if the parties did not actually litigate the issue in the prior proceeding. *Cromwell v. County of Sac,* 94 U.S. 351, 353, 24 L.Ed. 195 (1876); *Schumacker v. Industrial Accident Comm'n,* 46 Cal.App.2d 95, 115 P.2d 571 (1941). Neither equitable estoppel nor judicial estoppel requires a prior litigation of the issue in question, merely a prior judicial acceptance of the factual assertion made by the party who now advances an inconsistent contention.

7. Equitable estoppel does not apply to the present case due to the absence of privity and reliance.

8. Plaintiff Konstantinidis expressed his position in the workmen's compensation proceedings in part through sworn statements and in part through other materials. *See* note 5 *supra.*

9. *See* 1B *Moore's Federal Practice* ¶ 0.405[8], at 771 (2d ed. 1965). *See also, e.g., Reno v. Beckett,* 555 F.2d 757 (10th Cir. 1977); *Walker v. American Motorists Ins. Co.,* 529 F.2d 1163, 1164–65 (5th Cir. 1976).

cannot overrule the decision of the District's highest court, for "[n]o matter what the result, we cannot 'correct' a state court's interpretation of its own law. . . . The rule of *Erie* . . . calls on us to apply state law, not, if we can be persuaded to doubt its soundness, to participate in an effort to change it." *Tarr v. Manchester Insurance Corp.,* 544 F.2d 14, 14–15 (1st Cir. 1976).

No District of Columbia court has ever adopted the judicial estoppel doctrine. In certain cases the District's courts have imposed a bar against inconsistent statements, but in every instance the elements of privity, reliance, and prejudice have been present. *See, e.g., Jamison v. Garrett,* 92 U.S.App.D.C. 232, 205 F.2d 15 (D.C.Cir.1953) (applying District of Columbia law); *Clark v. Barber,* 21 App.D.C. 274 (D.C.Cir.1903) (applying District of Columbia law); *Atkins v. United States,* 283 A.2d 204, 206 (D.C. 1971). On the other hand, when one or more of these elements have been missing the District's courts have refused to impose an estoppel. *See, e.g., Parker v. Sager,* 85 U.S.App.D.C. 4, 174 F.2d 657 (D.C.Cir.1949) (applying District of Columbia law); *Dexter v. Gordon,* 11 App.D.C. 60 (D.C.Cir.1897) (applying District of Columbia law). Thus, although the law of the District recognizes the existence of the *equitable* estoppel doctrine, no case has embraced the broader *judicial* estoppel concept.

We realize that no District of Columbia court has ever expressly rejected judicial estoppel. Nevertheless, the District's cases evidence some hostility to the concept. Moreover, judicial estoppel has not been followed by anything approaching a majority of jurisdictions, nor is there a discernible modern trend in that direction. As the United States Court of Appeals for the Tenth Circuit observed in *Parkinson v. California Co.,* 233 F.2d 432, 437–38 (10th Cir. 1956), judicial estoppel "reflects the minority viewpoint which has encountered inhospitable reception outside the State of Tennessee." Even the state of Maryland, whose workmen's compensation commission would allegedly be insulted by plaintiff Konstantinidis' shift in position, would not

apply the judicial estoppel doctrine. *See, e.g., Travelers Corp. v. Boyer,* 301 F.Supp. 1396, 1401 n.4 (D.Md.1969) (applying Maryland law).

Furthermore, we agree with the Tenth Circuit that utilization of the judicial estoppel theory "would be out of harmony with [the modern rules of pleading] and would discourage the determination of cases on the basis of the true facts as they might be established ultimately." *Parkinson v. California Co.,* 233 F.2d at 438. We also believe that "[e]ven in the case of false statements in pleadings, public policy can be vindicated otherwise—and more practicably and fairly in most instances—than through suppression of truth in the future." *Id.*

Lacking a controlling District of Columbia decision on the issue in question, our task is to apply the rule we believe the District of Columbia Court of Appeals would follow today. *See In re Leasing Consultants, Inc.,* 592 F.2d 103, 109 (2d Cir. 1979). *See also Gooding v. Wilson,* 405 U.S. 518, 524, 92 S.Ct. 1103, 1107, 31 L.Ed.2d 408 (1972); *Meredith v. Winter Haven,* 320 U.S. 228, 234, 64 S.Ct. 7, 10, 88 L.Ed. 9 (1943). We conclude that the judicial estoppel doctrine has no vitality in this jurisdiction.

### III

Moreover, the District of Columbia Court of Appeals would not choose this particular case to introduce the judicial estoppel concept because of the plaintiff Konstantinidis' lack of success before the Commission and because of his defense that his prior position was a mistake made in good faith.

### A. *Lack of Success in the Prior Proceeding*

Judicial estoppel operates to prevent a party from insulting a court through improper use of judicial machinery. Thus the concept's underlying rationale is that a party should not be allowed to convince unconscionably one judicial body to adopt factual contentions, only to tell another judicial body that those contentions

were false. *Standage Ventures, Inc. v. State*, 114 Ariz. 480, 484, 562 P.2d 360, 364 (1977); *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704, 709 (Tex.Civ.App.1979), *writ ref'd n.r.e.*, No. B8440 (Tex. July 3, 1979). It follows that judicial estoppel should not be applied if no judicial body has been led astray. Accordingly, success in the prior proceeding is clearly an essential element of judicial estoppel. *City of Kingsport v. Steel & Roof Structure, Inc.*, 500 F.2d 617, 620 (6th Cir. 1974); *State Farm Automobile Insurance Co. v. Civil Service Employees Insurance Co.*, 19 Ariz.App. 594, 600, 509 P.2d 725, 731 (1973). *Cf. Parker v. Sager*, 85 U.S.App.D.C. 4, 8, 174 F.2d 657, 661 (D.C. Cir.1949) (no equitable estoppel without prior success); *Atkins v. United States*, 283 A.2d 204, 206 n.4 (D.C.1971) (same).

■ A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel. *See, e.g., City of Kingsport v. Steel & Roof Structure, Inc.*, 500 F.2d at 620; *Aerojet General Corp. v. D. Zelinsky & Sons*, 249 Cal.App.2d 604, 612, 57 Cal.Rptr. 701, 706 (1967); *Coleman v. Southern Pacific Co.*, 141 Cal.App.2d 121, 129–30, 296 P.2d 386, 392 (1956).[10] In the case before us, plaintiff Konstantinidis has yet to procure a favorable decision from any judicial body. The Prince George's County Circuit Court had no opportunity to rule before the parties made their compromise. As for the Commission, it twice *rejected* Konstantinidis' prior position that his injuries resulted from the sawhorse fall. *See* Joint Appendix at 90, 99. In approving the settlement, the Commission neither made nor intended to make any new decision concerning the cause of Konstantinidis' injuries. Section 52 of the Maryland workmen's compensation statute, Md.Ann.Code

art. 101, § 52 (1979), requires Commission approval of compensation settlements "to prevent advantage being taken of a claimant's possible ignorance of his rights or of his best interests." *Hanley v. Mulleneaux*, 192 Md. 592, 597, 65 A.2d 325, 327 (1949). Settlement approval does not signify a Commission endorsement of either party's position.

■ Konstantinidis did not induce the Prince George's County Circuit Court or the Commission to accept a theory contrary to the one now being argued in the malpractice suit against Dr. Chen. Consequently, even if judicial estoppel were generally recognized, the doctrine would not be applied to this case because of the lack of prior judicial success.

*B. Defense of Mistake*

■ Jurisdictions recognizing judicial estoppel also refuse to apply the doctrine when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court. An unintentional error is not penalized by precluding subsequent assertion of the truth. "Because the rule looks toward cold manipulation and not unthinking or confused blunder, it has never been applied where plaintiff's assertions were based on fraud, inadvertence, or mistake." *Johnson Service Co. v. Transamerica Insurance Co.*, 485 F.2d 164, 175 (5th Cir. 1973). *Accord, Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704, 709 (Tex.Civ.App.1979), *writ ref'd n.r.e.*, No. B8440 (Tex. July 3, 1979).

■ The genesis of medical problems provides fertile soil for reasonable disagreement, even among physicians. In particular, courts and experts have often drawn different conclusions as to the connection between an employee's injury and his employment. *See* 2A A. Larson, *The Law of*

---

**10.** In *Jamison v. Garrett*, 92 U.S.App.D.C. 232, 234, 205 F.2d 15, 17 (D.C.Cir.1953), a settlement did form the basis for a subsequent estoppel. However, it was the express language of the settlement in *Jamison*, language conveying a quitclaim to the property in controversy, that created the bar rather than the mere fact that the parties reached a settlement. Thus the *Jamison* defendant simply obtained the benefit of the bargain she had made in the course of the previous action. In contrast, the compromise between Konstantinidis, his employer, and the employer's insurer contains no admissions or stipulations of fact, nor was Dr. Chen an intended beneficiary of the settlement.

*Workmen's Compensation* § 73.21 (1974). Here, the origin of Konstantinidis' pain and suffering was not within his personal knowledge nor within the knowledge of his attorney. Given the emphatic denials in Dr. Barrett's reports that the acupuncture needle tip played any role,[11] it is not surprising that Konstantinidis represented to the Commission that his sawhorse accident was the sole causative event. We are satisfied that judicial estoppel "cannot be extended to reach an affiant whose major failing is the absence of clairvoyance." *Johnson Service Co. v. Transamerica Insurance Co.*, 485 F.2d at 175.

### CONCLUSION

Judicial estoppel has yet to make its way into the law of this jurisdiction, and we do not believe that there is any tendency in favor of its adoption. Furthermore, the District of Columbia Court of Appeals would not adopt the doctrine on the facts before us.

Mr. Konstantinidis' prior inconsistent statements will be evidence favoring the defendant in this case. However, Konstantinidis may be able to convince the factfinder that his position before the Commission was simply a mistake. Causation remains a genuine issue of material fact, thereby precluding summary judgment. *See Dewey v. Clark,* 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772 (D.C.Cir.1950) (Fahy, J.). The decision of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*