**Timothy J. HORGER, Plaintiff,**

**v.**

**NEW YORK UNIVERSITY MEDICAL CENTER, Bruce Grynbaum, M.D. and Pablo Morales, M.D., Defendants.**

No. 84 Civ. 7688 (GLG).

United States District Court,
S.D. New York.

Aug. 28, 1986.

Bauman, Greene & Kunkis, P.C., New York City, for plaintiff; Roger Kunkis, of counsel.

Bower & Gardner, New York City, for defendant New York University Medical Center; Lenore D. Kalmus, Richard H. Rea, of counsel.

Kanterman, Taub & Breitner, P.C., New York City, for defendant Pablo Morales, M.D.; Dennis A. Breitner, Kenneth A. Laub, David Schrager, of counsel.

Morris & Duffy, New York City, for defendant Bruce Grynbaum, M.D.

GOETTEL, District Judge.

Plaintiff Timothy Horger brought this medical malpractice action to recover for permanent and irreversible injuries allegedly sustained from the implantation of a penile prosthesis. Defendant Dr. Bruce Grynbaum, the physician responsible for Horger's general case, referred Horger to defendant Dr. Pablo Morales, who performed the operation. Both doctors are affiliated with defendant New York University Medical Center ("N.Y.U."). Subject matter jurisdiction is premised on complete diversity of citizenship. 28 U.S.C. § 1332 (1982).

All of the defendants move for summary judgment pursuant to Fed.R.Civ.P. 56. They assert that the trial of Horger's claims in *Horger v. Bay Tankers, Inc.*, No. 81–4527 (CLB), disposed of any and all issues that are the subject of this litigation. For the reasons discussed below, the defendants' motions are denied.

## I. Background

### A. The Original Injury

In 1981, Horger, a merchant seaman, worked as a utility pumpman aboard the T.T. New York, a 285,000 ton oil tanker owned by Bay Tankers, Inc. On May 5, 1981, Horger and his Chief Mate were attempting to repair an obstructed float in one of the vessel's petroleum cargo tanks. If the tank, which was six stories deep, had been properly maintained, it would have been totally empty. Horger and the Chief Mate entered the tank together. Each wore scuba-diving type air tanks and face masks to protect against any remaining petroleum fumes. At some point, Horger returned to the deck to replenish his air bottles. While waiting for Horger to return, the Mate became intoxicated by petroleum fumes. He fell, unconscious, into a foot or more of water and petroleum dregs in the bottom of the tank, his life in immediate peril. Horger rushed back into the tank and rescued the Mate. He did not have with him the air apparatus which should have been on the deck but was not. Consequently, he too became intoxicated and lost consciousness.

The Captain, hearing of the emergency, entered the tank and tied Horger's body to a line. The Captain, who also was affected by the noxious vapors, tied the rope improperly, leaving no trailing line to steady

Horger's ascent. As Horger was lifted toward the deck, his body swung in a pendulum fashion and struck the bulkhead. Horger received a 2½ inch gash in his left temple which bled profusely. The blow rendered him unconscious. It is unclear how long Horger remained unconscious.

### B. The Aftermath

Horger returned to work two days after the accident. He continually complained of severe headaches and was placed on a limited duty schedule. When the T.T. New York reached Scotland two weeks later, Horger was sent ashore to a local health facility. He was then flown to the United States and transferred to the Staten Island Marine Hospital. Thereafter, his condition allegedly deteriorated. He was transferred to the Carrier Foundation, a psychiatric hospital in New Jersey, where he was treated for cognitive defects, depression, severe headaches, and physical and functional deficits.

At some point during his nine-month stay at Carrier, Horger complained that he was unable to obtain an erection. He was seen by a sex therapist, allegedly to no avail. Eventually, he was transferred to the Institute of Rehabilitation Medicine, more commonly known as Rusk Institute, which is owned, operated, maintained, and controlled by defendant N.Y.U. During his six-month stay at Rusk, he was seen by a large number of physicians, among them doctors Grynbaum and Morales.

In response to the plaintiff's alleged impotence, Dr. Grynbaum brought in Dr. Morales, the Chief of Urology at N.Y.U. On September 17, 1982, Dr. Morales performed the penile implantation surgery which, the plaintiff alleges, has left him able to obtain an erection and engage in sexual intercourse but unable to achieve orgasm.

### C. The Prior Action

#### 1. *Horger v. Bay Tankers, Inc.*

In July 1981, Horger commenced an action in this district against Bay Tankers, Inc., the owner of the T.T. New York,

under the Jones Act, 46 U.S.C. § 688 (1982). He sought over $5,000,000 for injuries allegedly due to the negligence and unseaworthiness of the vessel.

After the defendant's insurer vetoed an $850,000 settlement, a jury trial commenced before Judge Brieant. The trial lasted nearly six weeks, and the jury returned a general verdict of $85,000 for the plaintiff.

#### 2. The Motion for a Retrial

In August 1983, Horger moved before Judge Brieant for an order setting aside the $85,000 verdict as inadequate at law and granting a new trial restricted to the issue of damages. Bay Tankers cross-moved to set aside certain sums from the verdict, including the cost of the penile surgery. Both motions were denied. *Horger v. Bay Tankers, Inc.*, No. 81–4527, slip op. (S.D.N.Y. October 20, 1983) (memorandum and order).

#### 3. The Appeal

In May 1985, Horger appealed the verdict to the United States Court of Appeals for the Second Circuit. He first argued that the district court had erred in its instructions regarding the testimony of a court-appointed expert witness. He also contended that the court had erred in refusing to charge the jury that (1) Bay Tankers was required to provide medical care; and (2) Bay Tankers was responsible for the consequences of the medical treatment provided. The Court of Appeals affirmed the judgment of the district court. *Horger v. Bay Tankers, Inc.*, 767 F.2d 908 (2d Cir.1985) (Mandate) (unofficial report).

### D. The Instant Action

On October 23, 1984, Horger filed the instant complaint against N.Y.U. and the defendant doctors. Horger does not challenge the degree of care with which the surgery was performed. Rather, he asserts that the doctors were negligent in deciding to implant the penile prosthesis and that they did not obtain his informed consent before performing the surgery.

## II. The Motions for Summary Judgment

The defendants ground their motions for summary judgment in four theories: *res judicata,* prior satisfaction, collateral estoppel, and judicial estoppel. They claim that, under the law of New York applicable to this diversity action, each theory bars the plaintiff's claims in this action. Contrary to these assertions, none of these theories avail the defendants.

### A. *Res Judicata*

■ The defendants incorrectly assert that the *Bay Tankers* action bars the current action by virtue of the doctrine of *res judicata.* Under that doctrine, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The sole defendant in the plaintiff's original suit was Bay Tankers. Thus, the doctrine of *res judicata* cannot apply unless the defendants herein were in privity with Bay Tankers.

Privity, in the context of *res judicata,* means a " 'concurrent relationship to the same right of property; [a] successive relationship to the same right of property; or [a] representation of the interests of the same person.' " *Staten Island Rapid Transit Operating Authority v. Interstate Commerce Commission,* 718 F.2d 533, 543 (2d Cir.1983) (quoting 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.411[1] at 1255 (2d ed. 1965)). In the earlier suit, Bay Tankers called the defendant physicians herein as adverse witnesses. Their testimony strongly supported the plaintiff's claims. The interests of the two sets of defendants are anything but coextensive. Since there is no privity between them, the current action is not barred by *res judicata.*

### B. Prior Satisfaction

■ A plaintiff is entitled to recover once and only once for a given injury. When payment of a judgment has been made, a plaintiff cannot pursue another action against a different defendant who is or may be liable for the same damages. *See* Prosser, *Law of Torts* § 48 (4th ed. 1971). The defendants maintain that this doctrine of prior satisfaction mandates summary judgment because Horger received full satisfaction in the *Bay Tankers* case for the same injuries for which he now seeks to recover.

■ Close analysis of the *Bay Tankers* case reveals that the *Bay Tankers* jury never reached the question of the defendants' negligence. Although Judge Brieant charged the jury that it might award damages for any injury suffered by the plaintiff if caused in any way by the defendant's negligence, he also instructed the jury not to consider the instant defendant's conduct. Judge Brieant restated his opinion as to the non-relationship between the shipboard injury and the penile surgery when he denied Bay Tankers' motion to set aside the cost of the penile surgery from the damage award. He stated, "[u]pon the totality of the evidence in the case, this Court is not inclined to set off the sums paid for medical treatment not causally related to the accident...." *Horger v. Bay Tankers, Inc.,* No. 81–4527, slip op. at 13 (S.D.N.Y. October 20, 1983) (memorandum and order). The Second Circuit confirmed this conclusion in its memorandum order that stated,

> Appellant's second argument is that the district court erred in refusing to charge the jury that the shipowner ... is responsible for the consequences of the medical treatment provided. The court declined to give the requested charge because it felt that the issue of medical malpractice was neither pleaded nor proved. The court's decision was proper. Although appellee's experts naturally disagreed with the diagnoses of appellant's conditions made by appellant's doctors, it was never alleged that appellant's doctors were negligent. A court is not required to instruct the jury on an issue neither pleaded nor effectively raised at trial.

*Horger v. Bay Tankers, Inc.*, 767 F.2d 908, slip op. at 2 (2d Cir.1985).

The defendants argue, that even without such an instruction, the jury must necessarily have meant to either award, or refuse to award, a recovery for all injuries in any way related to the accident. They predicate their argument on the large recovery sought, the proposed pretrial settlement, and the relatively insubstantial jury award. While entirely plausible, the presumption that the jury awarded damages for the medical malpractice alleged herein is no more than that—a presumption. Absent special interrogatories, it is impossible to state with any degree of legal certainty that the jury intended to award damages or even to consider the damages arising out of the defendants' alleged malpractice.

The language in the Second Circuit's decision, Judge Brieant's written opinion, and the fact that the jury's award was in the form of a general verdict, together lead this Court to conclude that Horger did not receive satisfaction in the *Bay Tankers* case for the injuries for which he now seeks to recover. The motion for summary judgment on the ground of prior satisfaction is, therefore, denied.

### C. Collateral Estoppel

The doctrine of collateral estoppel (now referred to in the *Restatement (Second) of Judgments* § 27 (1980) as "issue preclusion") precludes a party or its privy from relitigating in a subsequent suit a fact distinctly put in issue and directly determined in a prior suit, even if the subsequent suit states a different cause of action. *Southern Pacific Railroad v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). Since the one-time requirement of privity has been virtually abandoned in this context, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the determinative question on this aspect of the defendants' motions is whether Horger is attempting to litigate an issue conclusively determined in the *Bay Tankers* action.

The previous discussion with respect to prior satisfaction applies equally to issue preclusion. If we cannot state as a matter of law that the jury determined the issue of medical malpractice, then we certainly cannot state that the issue was conclusively litigated.

The defendants appear to argue that if, in fact, Horger did not assert his claims for medical malpractice against the initial tortfeasor, Bay Tankers, he should be estopped from asserting that claim against any subsequent tortfeasor. New York law does not mandate that an initial tortfeasor must be held liable for aggravated injuries, only that it may be held liable. *See Frederic v. St. John's Episcopal Hospital*, 100 A.D.2d 571, 473 N.Y.S.2d 502 (2d Dep't 1984); *Bergan v. Home for Incurables*, 75 A.D.2d 762, 427 N.Y.S.2d 817 (1st Dep't 1980); *Dubicki v. Maresco*, 64 A.D.2d 645, 407 N.Y.S.2d 66 (2d Dep't 1978). Horger had the option of seeking recovery for his subsequent injury from Bay Tankers or from the defendant doctors. Intentionally or unintentionally, he apparently pursued the latter course. The doctrine of collateral estoppel does not negate that choice.

### D. Judicial Estoppel

The doctrine of "judicial estoppel," more commonly referred to as "preclusion against inconsistent positions," prevents a party who succeeds in maintaining a position from thereafter asserting a contrary position in the same or related litigation. *Environmental Concern, Inc. v. Larchwood Construction Corp.*, 101 A.D.2d 591, 476 N.Y.S.2d 175, 177 (2d Dep't 1984). Thus, "[a] litigant is not completely free to argue whatever state of facts seems advantageous at a point in time, and a contradictory state whenever self-interest may dictate a change.... [O]ne may not play 'fast and loose' with the judicial process." 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405[8] at 240 (2d ed. 1984).

The New York courts have not widely embraced the doctrine of judicial

estoppel and will apply it only when a party reverses its earlier position in what is essentially clear and intentional fraud. For example, a plaintiff is estopped from asserting that a jury's adverse verdict was merely advisory, after having previously and successfully argued that the pending verdict should be conclusive. *Will of Schwartz v. Greenfield,* 124 Misc.2d 1017, 478 N.Y.S.2d 553 (Sup.Ct.N.Y.Co.1984).

In the *Bay Tankers* action, Horger alleged that his impotence was organically caused and that the penile implantation surgery was a necessary and proper procedure. He now claims that his impotence may well have been psychological in nature or was perhaps induced by the intensive drug therapy that he received prior to the operation. In this action, the defendants are alleged to have been negligent in not ascertaining with greater certainty the necessity of the surgery and in not obtaining his informed consent.

The defendants argue that the Court should estop the plaintiff from asserting this plainly inconsistent position. Horger claims that the inconsistency is the result of his own good faith reliance on the prior advice and testimony of his physicians. The plaintiff contends that he relied, in the *Bay Tankers* action, upon the advice and presumed expertise of his doctors in asserting that the surgery was necessary. His depression and the drug therapy that he received allegedly prevented him from judging accurately whether the doctors were in fact reliable. Although this argument may be no more than an expedient reinterpretation of the facts in order to recoup the anticipated damages not recovered in the earlier action, it is possible that it is true. It will require a full evidentiary hearing to decide this point.

The defendants have not cited, nor have we found, any precedent wherein a court applied the doctrine of judicial estoppel to preclude a litigant from asserting a position against a party contrary to one taken previously in the purported good faith reliance on the advice or testimony of that party. There is, however, persuasive case law precluding the doctrine's application in that context. In *Konstantinidis v. Chen,* 626 F.2d 933 (D.C.Cir.1980), the plaintiff alleged, in reliance on the treatment and testimony of his physician, that a work-related accident was the sole cause of a ruptured disc. The court permitted a subsequent suit by the same plaintiff against the physician for malpractice. According to the court, "the origin of Konstantinidis' pain and suffering was not within his personal knowledge nor within the knowledge of his attorney.... [J]udicial estoppel 'cannot be extended to reach an affiant whose major failing is the absence of clairvoyance.'" *Id.* at 940 (quoting *Johnson Service Co. v. Transamerica Insurance Co.,* 485 F.2d 164, 175 (5th Cir.1973)). It is at least plausible that Horger may have relied on misinformation provided by the defendant doctors in asserting an inconsistent position in the *Bay Tankers* action. Therefore, this Court will not deny him his chance to fully and fairly litigate his claim.

### III. Conclusion

The defendants argue that Horger brings this action against them only because he is dissatisfied with the $85,000 award in the *Bay Tankers* action. They insist that he was and is a malingerer and that this is clearly proven by the blatant inconsistency between his past and current allegations. Ultimately, whether Horger is a malingerer seeking unjust enrichment or whether he is truly aggrieved and entitled to compensation for negligence is a matter for a jury to determine. For this reason, and the reasons stated above, the defendants' motions for summary judgment are denied.

SO ORDERED.