**ALEXANDER AND ALEXANDER, INC., as Assignee for Tifco, Inc., Plaintiff,**

v.

**WACHOVIA BANK & TRUST COMPANY, N.A., Defendant/Third–Party Plaintiff,**

v.

**PATHWAY FINANCIAL, F.A., the Federal Reserve Bank of Richmond, and the Federal Reserve Bank of Chicago, Third–Party Defendants.**

**No. 90 C 201.**

United States District Court, N.D. Illinois, E.D.

Jan. 22, 1991.

---

**134**

William M. Stevens, Nancy E. Paridy, Thomas R. Hill, Rooks, Pitts and Poust, Chicago, Ill., for plaintiff.

Thomas S. Moore, Jane F. Anderson, McCarthy, Duffy, Neidhart & Snakard, Chicago, Ill., for defendant, third-party plaintiff.

## ORDER

BUA, District Judge.

Plaintiff Alexander & Alexander, Inc. ("Alexander") commenced this diversity action against defendant Wachovia Bank & Trust Company, N.A. ("Wachovia"), alleging that Wachovia improperly charged Alexander's bank account for a check containing an unauthorized indorsement. Wachovia, in turn, filed a third-party action against Pathway Financial, F.A. ("Pathway"), the Federal Reserve Bank of Richmond, and the Federal Reserve Bank of Chicago, for breach of their presentment warranties. Wachovia and the third-party defendants now move for summary judgment against Alexander. For the reasons stated herein, the motion for summary judgment is denied.

## FACTS

This lawsuit arises from a financing agreement between Tifco, Inc. ("Tifco"), an insurance premium finance company, and Financial Assurance Consultants ("FAC"),[1] an insurance broker. When FAC obtained an "Errors and Omissions" insurance policy from Cadillac Insurance Company ("Cadillac"), it approached Tifco for purposes of obtaining the necessary financing. Tifco agreed to finance the policy, and the parties executed a premium finance agreement on August 10, 1987. One day later, Tifco issued a check in the amount of $600,-000 ("check # 322550") to pay for the insurance. The check, drawn on Tifco's checking account at Wachovia, was made payable to "Cadillac Insurance Company."

---

1. FAC is also known as Frank A. Cramsie Com-   pany and Financial Assurance Company.

Tifco, however, did not deal directly with Cadillac. Cadillac was not licensed to write insurance policies in Illinois and, therefore, it conducted business in Illinois through agents. United Diversified Corporation ("UDC") was one such agent. Under the terms of an administrative agreement between UDC and Cadillac, UDC was authorized to act on behalf of Cadillac with respect to the administration of several types of insurance policies.[2] Cadillac also had an agency relationship with FAC. Pursuant to the agency agreement between FAC and Cadillac, FAC was given the authority to sell and administer Cadillac "Truck Owner's" policies.

Because Cadillac was operating through agents in Illinois, Tifco did not send check # 322550 to Cadillac. Instead, it delivered the check to Carmen Monaco, the president of UDC. Monaco indorsed the check as follows:

> Carmen F. Monaco (signed)
> President of UDC
> Administrator for Cadillac Insurance Company

The check was deposited in FAC's money-market account at Pathway—despite the fact that the underlying insurance was for FAC's own benefit.

Pursuant to the finance agreement between FAC and Tifco, FAC proceeded to make a $120,000 downpayment to Tifco. The remainder of the $600,000 was to be paid in nine monthly installment payments of $55,466.64. FAC paid the first monthly installment, but it defaulted on the second installment. On October 7, 1987, Tifco sent FAC a "Notice of Intent to Cancel" the insurance coverage. By October 28, 1987, Tifco still had not received payment from FAC, so Tifco issued a "Notice of Cancellation." When Cadillac received the notice, it informed Tifco that the insurance policy at issue did not exist. Tifco then demanded repayment from Cadillac, UDC, and FAC. Its demands were unsuccessful.

After obtaining a copy of check # 322550, Tifco informed its bank, Wachovia, that the check contained an unauthorized indorsement. To support this assertion, Tifco submitted an affidavit from Ernest M. Solomon, the president of Cadillac. In the affidavit, dated November 17, 1987, Solomon stated that the indorsement was indeed unauthorized and that Cadillac never received the proceeds of the check. Wachovia apparently took no action in response to this affidavit.

On January 11, 1988, Tifco filed suit in federal court, naming FAC, Andrew Ahern (FAC's president), UDC, Monaco, and Pathway as defendants. *Tifco, Inc. v. Financial Assurance Consultants, Inc.*, No. 88 C 215 (N.D.Ill.) (Conlon, J.). Seeking to recover the unpaid funds from these defendants, Tifco asserted claims for, *inter alia*, breach of contract, conversion, and fraud. More specifically, Tifco alleged that FAC, UDC, Ahern, and Monaco unlawfully converted Tifco's funds by depositing check # 322550 into FAC's money-market account. Tifco further alleged that Pathway violated § 3–404 of the Uniform Commercial Code by accepting a check with an unauthorized indorsement.

Tifco subsequently dismissed Pathway from the lawsuit, though the reasons for the dismissal are not entirely clear. On April 26, 1989, Tifco amended its complaint and brought Cadillac into the lawsuit as an additional defendant. Accusing Cadillac of converting Tifco's funds, Tifco asserted claims for breach of contract and breach of fiduciary duty against Cadillac. Tifco subsequently settled its claims against both Cadillac and Monaco.

Alexander became involved on January 12, 1990, when it commenced this diversity action against Wachovia to recover the unpaid $480,000. Alexander brings this action as assignee of Tifco's rights under the financing agreement.[3]

---

2. UDC had authority to administer the following types of policies: 1) "Group Care Plus"; 2) "TOP"; 3) "Basic Hospital Medical, Surgical and Convalescent Care"; 4) "Major Hospital Medical, Surgical and Convalescent Care"; and 5)

"Individual Comprehensive Major/Medical." *Administrative Agreement*, exhibit A.

3. Prior to 1988, Tifco was a subsidiary of Alexander. On October 31, 1988, Alexander sold Tifco to TransAmerica Insurance Finance Com-

## DISCUSSION

At the heart of this dispute is the authority of UDC to negotiate check # 322550 on behalf of Cadillac. The complaint alleges that Wachovia is liable to Alexander for honoring the check because it contained an unauthorized indorsement. Wachovia moves for summary judgment on the ground that UDC possessed sufficient authority to negotiate the check.[4]

A district court may enter summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists, and summary judgment is therefore inappropriate, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ In support of its motion for summary judgment, Wachovia contends that in the litigation pending before Judge Conlon (88 C 215), Tifco admitted that UDC was authorized to indorse check # 322550. According to Wachovia, Tifco's admissions are found in several sources: 1) Tifco's amended complaint; 2) "Tifco's Response to Monaco's Statement of Facts and Tifco's Additional Statements of Fact"; and 3) the deposition testimony of Tifco's Midwest regional manager, Ronald Berich. Since Tifco previously admitted that UDC had authority to indorse the check, Wachovia argues, the doctrine of judicial estoppel bars Alexander from now asserting a contrary position. Judicial estoppel "precludes a party from advocating a position inconsistent with one previously taken with respect to the same facts in an earlier litigation." *Himel v. Continental Ill. Nat'l Bank and Trust Co.*, 596 F.2d 205, 210 (7th Cir.1979)

(quoting *In re Yarn Processing Patent Validity Litig.*, 498 F.2d 271, 279 (5th Cir.), *cert. denied*, 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974)). The underlying purpose of the doctrine is to safeguard the integrity of the judicial process. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982). If a party persuades one court to accept his position, and later convinces another court to adopt the opposite position, the logical assumption is that at least one of the courts has been misled. *Id.* at 599; *Konstantinidis v. Chen*, 626 F.2d 933, 938–39 (D.C.Cir.1980). Judicial estoppel works to prevent a litigant "from 'playing fast and loose' with the courts" by intentionally asserting inconsistent positions. *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir.1982).

■ In Wachovia's view, Tifco's admissions are inconsistent with the position taken by Alexander (as assignee) in this case.[5] Wachovia, however, has failed to satisfy an essential element of judicial estoppel—*i.e.*, that the party to be estopped actually prevailed on the disputed issue in the prior litigation. *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir.1990); *Eagle Found., Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir.1987). Wachovia does not state that a trier of fact accepted Tifco's position by specifically finding that UDC had authority to indorse check # 322550. There is no allegation, moreover, that Judge Conlon made some sort of judicial finding in favor of Tifco. Rather, Wachovia points to the settlement Tifco obtained from Cadillac and Monaco. Unfortunately for Wachovia, a settlement is not the sort of prior success which implicates judicial estoppel. *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 666 (Fed.Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988);

pany. In connection with the transaction, Tifco assigned its rights under this dispute to Alexander.

4. Although the motion for summary judgment was filed by Wachovia, Pathway, and the Federal Reserve Banks of Richmond and Chicago, the court will refer to the moving parties collectively as "Wachovia" for the sake of simplicity.

5. There is some question as to whether the two allegedly inconsistent positions were asserted by the *same party*. Wachovia seeks to hold Alexander accountable not for its own admissions, but for those of Tifco. Nonetheless, Alexander does not oppose Wachovia's argument on this basis—presumably because Alexander asserts its claims as assignee of Tifco.

*Edwards*, 690 F.2d at 599–600; *Konstantinidis*, 626 F.2d at 939. A settlement does not imply a judicial endorsement or acceptance of a litigant's assertions. *Water Technologies Corp.*, 850 F.2d at 666; *Konstantinidis*, 626 F.2d at 939. Consequently, there is no perception that a court has been led astray, and the integrity of the judicial process is left intact. *Water Technologies Corp.*, 850 F.2d at 666; *Edwards*, 690 F.2d at 599. Wachovia simply cannot rely on a settlement as the basis for its judicial estoppel theory.

■ Nonetheless, Wachovia contends that Alexander is bound by Tifco's admissions even if judicial estoppel does not apply. Assuming that Tifco's admissions are binding on Alexander, the court cannot agree that any such admissions entitle Wachovia to judgment in its favor. Wachovia's liability is tied to the authority of UDC and FAC to indorse and deposit check #322550. Although Tifco has admitted that UDC and FAC are agents of Cadillac for some purposes, Tifco never openly admitted that either party had authority to negotiate the check in the manner in which it was negotiated in this case. None of the statements relied upon by Wachovia conclusively establish that UDC and FAC were fully authorized to indorse and deposit a check earmarked for payment of a Cadillac Errors and Omissions policy.

At this stage of the litigation, there remains a factual dispute as to the authority question. The authority of UDC (and Monaco) to indorse checks on behalf of Cadillac was circumscribed by the administrative agreement between UDC and Cadillac. UDC was only given administrative authority with respect to certain types of Cadillac insurance policies specified in the administrative agreement. *See* note 2, *supra*. The Errors and Omissions policy obtained by FAC was not within the purview of this authority. Cadillac does not even write Errors and Omissions policies in Illinois. Furthermore, there is no solid evidence that either UDC or FAC was authorized to deposit the funds into FAC's bank account; FAC was only authorized to act on behalf of Cadillac for certain Truck Owner's policies. *See Managing General Agent Agreement*, art. I, para. 1.01; art. IV, para. 4.03.

Wachovia has not presented sufficient evidence upon which to conclude that UDC and FAC actually had the authority to indorse and deposit check #322550. A question of fact regarding this authority renders summary judgment inappropriate.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by defendant Wachovia and third-party defendants Pathway, the Federal Reserve Bank of Richmond, and the Federal Reserve Bank of Chicago is denied.

IT IS SO ORDERED.