18 F.3d 953
 305 U.S.App.D.C. 193
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
BECHTEL & COLE, Plaintiff-Appellee,
v.
GRACELAND BROADCASTING INC.; James J. Nathan, President,
Director Graceland Broadcasting, Inc.; William Blake
Tanner, Sr.; William Blake Tanner, Jr., Secretary,
Treasurer, Director, Defendants-Appellants.
 No. 92-7190.
 United States Court of Appeals, District of Columbia Circuit.
 March 9, 1994.
Suggestion for Rehearing In Banc
Denied May 25, 1994.
 
 Before: MIKVA, Chief Judge, WALD and EDWARDS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal of the defendants from the judgment of the District Court, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that this case be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir.Rule 41.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Graceland Broadcasting, Inc. hired Bechtel & Cole ("Bechtel"), a District of Columbia law firm, to assist in a comparative license proceeding before the Federal Communications Commission ("FCC"). At the heart of this case lies a protracted dispute over the legal fees that accrued in the course of that representation. After efforts to obtain payment of its mounting fees proved unsuccessful, Bechtel brought suit in the district court under federal diversity jurisdiction against Graceland Broadcasting and its principals, William B. Tanner, Sr., W. Blake Tanner, Jr., and James J. Nathan (collectively, "Graceland"), for breach of contract, account stated, and recovery in quantum meruit. The jury found for Graceland on the breach of contract and quantum meruit claims, but rendered a verdict for Bechtel on the account stated claim for $53,400. The trial judge denied Graceland's motions for judgment notwithstanding the verdict and a new trial. Graceland filed this timely appeal.
 
 
 5
 Graceland maintains that numerous errors plagued the proceedings below. In the main, Graceland contends that the district court lacked personal jurisdiction over it due to the "government contacts doctrine"; that Bechtel was judicially estopped from attempting to pierce Graceland's corporate veil; that the court erroneously applied District of Columbia law, rather than Tennessee law, to the veil-piercing issue; that an account stated may not be implied from a debtor's silence; that the statute of frauds barred Bechtel from recovering based on an oral suretyship agreement; and that the court erred in admitting testimony regarding William B. Tanner, Sr.'s sizeable fortune. Because we see no merit to Graceland's contentions, we affirm.
 
 A. Personal Jurisdiction
 
 6
 Staking its claim on the "government contacts doctrine," Graceland first argues that the district court lacked personal jurisdiction necessary to entertain Bechtel's claims. The government contacts doctrine bars courts in the District of Columbia from exercising personal jurisdiction based solely on the defendant's contacts with a federal instrumentality. See Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc., 355 A.2d 808, 813 (D.C.1976) (en banc). The doctrine has its roots in the right of citizens to petition the federal government for redress of grievances. See Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C.Cir.1983) (citing Rose v. Silver, 394 A.2d 1368, 1373-74 (D.C.1978)). In Naartex, we extended the doctrine to protect defendants whose only contact with the District is lobbying activity before federal agencies to secure their own proprietary interests. See 722 F.2d at 787.
 
 
 7
 Clearly, Graceland's petitions before the FCC fall into the category of proprietary activity recognized in Naartex. However, we find it just as clear that Graceland's relevant contacts with the District were by no means limited to protected petitioning activity. Graceland initiated a professional relationship with Bechtel, a District of Columbia law firm, to conduct its FCC business. The FCC allows any attorney who is a member of a state bar in good standing to practice before it. See 47 C.F.R. Sec. 1.23 (1992). Because Graceland's decision to hire a District of Columbia law firm was discretionary, not dependent on "the unique character of the District as the seat of national government," Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc., 355 A.2d 808, 813 (D.C.1976) (en banc), we find that Graceland's contacts with Bechtel fall outside the protective scope of the government contacts doctrine. As in Chase v. Pan-Pacific Broadcasting, Inc., 617 F.Supp. 1414 (D.D.C.1985), in this case "(1) the cause of action arises from a professional relationship between a former client and the attorney who had represented the client before a federal agency, (2) the 'minimum contacts' with the District are limited to contacts between the client and the attorney ..., and (3) the agency does not restrict representation before the agency to members of the District of Columbia bar." Id. at 1427. Under these circumstances, the government contacts doctrine is unavailing to divest the District of Columbia courts of personal jurisdiction.
 
 B. Judicial Estoppel
 
 8
 Graceland next argues that Bechtel was judicially estopped from attempting to pierce Graceland's veil, because Bechtel had argued before the FCC that Graceland was a valid corporate entity. In Konstantinidis v. Chen, 626 F.2d 933 (D.C.Cir.1980), this court described judicial estoppel as a doctrine that prevents a litigant from changing a position asserted in a prior proceeding in order to restrain "reckless and false" oaths. Id. at 937. In contrast to equitable estoppel, which has had a warm reception in modern courts, judicial estoppel does not require that the party seeking to invoke it have been an adverse party in the prior proceeding, have acted in reliance upon his opponent's prior position, or face likely injury if the court permits a shift in his opponent's position.
 
 
 9
 Construing District of Columbia law, Konstantinidis recognized that the District's cases "evidence some hostility to the concept" of judicial estoppel. Id. at 938. In light of the doctrine's inhospitable reception here and elsewhere, see Parkinson v. California Co., 233 F.2d 432, 437-38 (10th Cir.1956), the Konstantinidis court concluded that "the judicial estoppel doctrine has no vitality in this jurisdiction." 626 F.2d at 938. The court reasoned that judicial estoppel theory "would be out of harmony with the modern rules of pleading and would discourage the determination of cases on the basis of the true facts as they might be established ultimately." Id. (citing Parkinson, 233 F.2d at 438). Since Konstantinidis was decided in 1980, the District of Columbia courts have not given any indication that they disagree with this well-reasoned opinion, and we do not depart from it here.
 
 C. Choice of Law
 
 10
 Graceland next urges that the district court erred in applying District of Columbia law, rather than Tennessee law, to the issue of whether Graceland's corporate veil could be pierced to assess liability on its principals. Graceland does not now argue that the district court misapplied the law it deemed applicable, Labadie Coal Co. v. Black, 672 F.2d 92 (D.C.Cir.1982), but rather contends that Labadie is wholly inapplicable to Graceland's cause. Because Graceland neither objected to the use of Labadie below nor suggested that the district court engage in conflicts-of-law analysis, we deem this issue waived. See Rymer v. Pool, 574 A.2d 283, 285 (D.C.1990) ("Generally, when parties do not raise the issue of the applicability of foreign law, a court is under no obligation to apply foreign law and may instead apply the law of the forum."). We note, in connection with this conclusion, that there is no inherent unfairness in the application of forum law to the veil-piercing issue in this case, because the question is not one of internal corporate governance, but rather implicates the rights of parties external to the corporation, and the District of Columbia has substantial interests at stake. See generally First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba, 462 U.S. 611, 621 (1983).
 
 D. Account Stated
 
 11
 Next, Graceland contends that the district court erroneously allowed the jury to infer an account stated from Graceland's silence after receiving its legal bills. An account stated is "an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance." 1A C.J.S. Account Stated Sec. 2(a) (1985). Graceland urges that under our relevant precedent, Chinn v. Lewin, 16 F.2d 512 (D.C.Cir.1926), a jury may not infer a promise to pay for personal services from silence.
 
 
 12
 We find that Graceland mischaracterizes the pertinent law. Chinn very clearly states that, for personal service contracts, silence alone can never be sufficient. See 16 F.2d at 515. The case does not suggest that silence may not be considered as a factor at all. After examining the district court's instruction, we conclude that it does not in any way misstate the law. The district court merely relates that an agreement may be implied from the circumstances and that Graceland's failure to object is a factor that the jury may consider in evaluating those circumstances. See Trial Transcript, Vol. II, at 120. Finding no error, we move on.
 
 E. Statute of Frauds
 
 13
 Graceland next argues that Bechtel's attempts to recover from William B. Tanner, Sr. were barred by the statute of frauds, which precludes recovery on an oral promise to answer for the debts of another. This argument, however clever, does not address the arguments made or instructions given in this case. Bechtel did not attempt to demonstrate that Tanner, Sr. had formed a contract--oral or written--to assume the debts of the corporation. Rather, Bechtel contended that Tanner, Sr. and others had dominated the corporation to an impermissible extent. In effect, Bechtel's argument was that the debts at issue were not those of another, but belonged to Tanner, Sr. himself. In these circumstances, the statute of frauds provision on suretyship is wholly inapposite.
 
 F. Comments on Tanner, Sr.'s Finances
 
 14
 Finally, Graceland alleges that on several occasions during the trial, Bechtel's counsel commented impermissibly about Tanner Sr.'s abundant personal resources. Although there are certainly cases in which comments about a defendant's wealth may rise to the level of prejudicial error, we do not think this is one of them. Counsel's references to Tanner, Sr.'s wealth were isolated and occurred generally in conjunction with other evidence concerning the likelihood of Tanner, Sr.'s controlling the fledgling corporation, a principal point at issue in the case. Recognizing that a judgment call is warranted, we find no reason, looking at the record as a whole, to believe these comments unduly or prejudicially affected the result.
 
 
 15
 * * *
 
 
 16
 For the foregoing reasons, we affirm the jury verdict entered in favor of Bechtel on the account stated claim for $53,400.
 
 
 17
 It is so ordered.